UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PETER PARKER,                                    )     No. CV 13-7258 FFM
                                                 )
                      Plaintiff,                 )     MEMORANDUM DECISION AND
                                                 )     ORDER
         v.                                      )
                                                 )
CAROLYN W. COLVIN, Acting                        )
Commissioner of Social Security,                 )
                                                 )
                      Defendant.                 )
_____ )

         Plaintiff brings this action seeking to overturn the decision of the Commissioner
of the Social Security Administration denying his application for a period of disability,
disability insurance benefits, and supplemental security income benefits.  The parties
consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United
States Magistrate Judge.  Pursuant to the October 10, 2013 Case Management Order, on
May 22, 2014, the parties filed a Joint Stipulation ("JS") detailing each party's
arguments and authorities.  The Court has reviewed the JS and the administrative record
("AR"), filed by defendant on April 9, 2014.  For the reasons stated below, the decision
of the Commissioner is affirmed.

/ / /

/ / /

/ / /

/ / /

## PROCEDURAL HISTORY

On February 22, 2010, plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income benefits.  Plaintiff alleged inability to work since January 1, 2007.  (AR 149-56.)  Plaintiff's applications were denied initially and upon reconsideration.  (AR 92-96, 100-04.)  Plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 105-06.)  ALJ Zane A. Lang held hearings on July 28, 2011 and October 13, 2011.  (AR 53-80, 81-84.)  Plaintiff appeared with counsel and testified at the later hearing.  (AR 53-80.)  On October 25, 2011, the ALJ issued a decision denying benefits.  (AR 15-34.)  Plaintiff sought review of the decision before the Social Security Administration Appeals Council.  (AR 10-14.)  The Council denied the request for review on August 28, 2013.  (AR 1-6.)

Plaintiff filed the complaint herein on October 4, 2013.


## ISSUES

Plaintiff raises the following issues:

1.    Whether the ALJ erred in assessing plaintiff's residual functioning capacity ("RFC");

2.    Whether the ALJ erred in the credibility findings; and

3.    Whether the ALJ erred in finding that plaintiff had the ability to perform his past relevant work.


## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d

573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

1.   <u>Plaintiff's RFC</u>.

     A.     <u>Background</u>.

     As determined by the ALJ, plaintiff has the severe impairments of degenerative joint disease of the knees; degenerative disc disease of the lumbar, thoracic, and cervical spine; diabetes; obesity; hypertension; and arthritis.  (AR 20.)  The ALJ found that plaintiff had the RFC to perform light work, except that plaintiff could lift and carry 30 pounds occasionally and 10 pounds frequently; could stand and walk four hours in an eight-hour workday; could sit six hours in an eight-hour workday; and was limited to only occasionally climbing ladders, ropes, or scaffolds.  (AR 25.)

     In making this determination, the ALJ gave great weight to an opinion prepared sometime between March and September 2010 by plaintiff's treating physician, Vlad Nusinovich, M.D.  (AR 28; *see* AR 313-17.)  In this undated opinion, Dr. Nusinovich limited plaintiff to lifting and carrying 30 pounds occasionally and 10 pounds frequently; and walking and standing up to four hours in an eight-hour day.  (AR 317.)

/ / /

/ / /

/ / /

/ / /

/ / /

The ALJ rejected a September 27, 2011 opinion in which Dr. Nusinovich opined that plaintiff was limited to less than sedentary work.[1]  (AR 28; *see* AR 349-352.)  Dr. Nusinovich based the September 2011 opinion on plaintiff's symptoms of persistent lower back pain; radiculopathy down both legs; and severe bilateral knee pain; and the clinical signs of decreased range of motion of the lumbrosacral spine; crepitus in both knees; and decreased range of motion in both knees.  (AR 349.)

Plaintiff alleges that the ALJ erred in rejecting Dr. Nusinovich's September 2011 opinion.  (JS 3-7, 11-12.)  The Court finds that remand on this issue is not warranted.

B.    Discussion.

In evaluating physicians' opinions, the case law and regulations distinguish among three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 404.1527(d), 416.902, 416.927(d).  As a general rule, more weight should be given to the opinion of a treating source than to the opinions of physicians who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An ALJ may reject a treating physician's uncontradicted opinion only with "clear and convincing" reasons supported by substantial evidence in the record.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)) (internal quotation marks omitted).  If the treating physician's

---

[1]  Specifically, Dr. Nusinovich opined that plaintiff could lift and carry up to 10 pounds; could stand and/or walk up to two hours in an eight-hour workday; could sit less than six hours in an eight-hour workday; and would be absent from work more than three days per month.  AR 350; *see* 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling ("S.S.R.") 83-10, 1983 WL 31251, *5 (S.S.A.).

opinion is controverted by another physician's opinion, the ALJ must provide "specific and legitimate" reasons, supported by substantial record evidence, in order to reject the treating physician's opinion. *Lester*, 81 F.3d at 830; *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). "The ALJ could meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted).

Here, Dr. Nusinovich's September 2011 opinion was contradicted his own earlier opinions, including the undated opinion on which the ALJ relied. Therefore, the ALJ was required to provide specific, legitimate, record-supported reasons for rejecting the September 2011 opinion. The Court finds that he did so.

As the ALJ asserted (AR 20-24), plaintiff began treatment with Dr. Nusinovich in January 2010. (AR 267-73.) In the initial examination, Dr. Nusinovich found reduced range of motion; spasm on palpitation of the spine; and tenderness in the spine. However, plaintiff's gait, station, and joint stability were normal. In addition, plaintiff's neurological examination was normal. (AR 20-71.) Dr. Nusinovich diagnosed plaintiff with back syndrome with radiculopathy, knee problems, and arthralgias.[2] (AR 271.)

_____

[2] Dr. Nusinovich also diagnosed plaintiff with depression, obesity, diabetes mellitus, and hypertension. However, he did not cite these impairments as a basis for his September 2011 opinion. (AR 349.) In any case, as the ALJ noted (AR 23, 24-25), plaintiff's hypertension responded well to medication. He received no specialized mental health treatment; his diabetes was managed with medication and diet; and he was advised to lose weight to address his obesity. (*See* AR 267-77, 313-40, 367-96.) In addition, there were no laboratory records evidencing testing of plaintiff's kidney function or glucose levels. (*See generally* AR 247-96.) Thus, the ALJ reasonably found that those impairments had limited or minimal effect on plaintiff's functioning. *See* AR 23, 24-25; *see also Warre v. Commissioner of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairment that can effectively be controlled by medication cannot serve as a basis for finding a disability); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment sufficient to discount

(continued...)

He opined that plaintiff could lift 25 pounds frequently and 50 pounds occasionally and could stand no more than five hours in an eight-hour workday.  (AR 273.)

Dr. Nusinovich's subsequent examinations of plaintiff included findings similar to those in the January 2010 examination.  (*See* AR 274-77, 313-40, 367-96.)  In April 2010 and July 2010, for example, Dr. Nusinovich found reduced range of motion and tenderness to palpitation in the spine, but plaintiff's neurological examinations were normal.  (AR 323-24, 331.)  In February 2011, plaintiff complained of knee pain, but his knee joints were stable, with no laxity or deformity.  (AR 367, 368-69.)  Furthermore, Dr. Nusinovich never reported that plaintiff's gait and station were adversely affected by his musculoskeletal impairments.  Nor did he ever report hearing crepitus in plaintiff's knees, despite citing that symptom as a basis for his September 2011 opinion.  In addition, Dr. Nusinovich never recommended surgery or physical therapy for plaintiff's back and knee impairments.  (*See* AR 267-77, 313-40, 367-96.)  He never reported an abnormal neurological examination, and, as the ALJ asserted (AR 28), there is no EMG testing or other nerve testing in the record to support his radiuculopathy claim (*see generally* AR 247-96).

As the ALJ acknowledged (AR 20-21, 21-22), imaging tests revealed abnormalities in plaintiff's knees and spine.  August 2009 x-rays revealed diffuse idiopathic skeletal hyperostosis ("DISH") in plaintiff's thoracic spine and degenerative changes in the cervical and lumbar spine.  (AR 258-60.)  A February 2011 MRI confirmed the presence of DISH in the thoracic spine, but found "no definitive evidence of spondyloarthropathy."  (AR 357.)  As to plaintiff's knees, both sets of imaging tests revealed only mild to moderate findings (*e.g.*, a small left knee medial meniscus tear).  (*See* AR 262, 356.)  The ALJ reasoned that the degeneration evidenced in the imaging tests was not consistent with radiculopathy.  (AR 28-29.)  Although the imaging test

---

[2](...continued)
claimant's testimony regarding the severity of an impairment).

1    results could conceivably be interpreted more favorably to plaintiff, the ALJ's

2    interpretation was rational.  Accordingly, the Court must defer to it.  *Batson v. Comm'r*

3    *of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

4         In light of plaintiff's limited treatment, the consistently mild findings on

5    examination, and the lack of evidence of radiculopathy, the ALJ reasonably concluded

6    that the September 2011 opinion was not supported by either Dr. Nusinovich's treating

7    records or the record as a whole.  (AR 28.)  The ALJ also reasonably concluded that the

8    record does not reflect a deterioration in plaintiff condition between January 2010 and

9    September 2011, such that the more extreme limitations in the later opinion were

10   warranted.  (*Id.*)  This reasoning was sufficient to discount the September 2011 opinion.

11   *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ provided specific and

12   legitimate reasons for rejecting treating doctor's opinion, as that opinion was

13   inconsistent with doctor's examination notes as well as internally inconsistent and not

14   supported by any findings made by treating doctor or any other doctor).

15        Plaintiff argues that the February 2011 MRIs support the more severe limitations

16   in the September 2011 opinion.  (JS 6.)  However, as set forth above, the spinal MRI

17   merely confirmed the previous finding of DISH, and the knee MRI revealed only mild

18   to moderate findings.  The ALJ thus reasonably concluded that the medical evidence did

19   not support the more severe limitations.  (AR 28.)

20        Plaintiff further argues that the September 2011 opinion should be given greater

21   weight because it reflects Dr. Nusinovich's "greater familiarity" with plaintiff's

22   condition.  (AR 5.)  This argument is unpersuasive.  In weighing a physician's opinion,

23   the factfinder may consider both the length of the treatment relationship and how well

24   the opinion is supported by the medical evidence.  20 C.F.R. §§ 404.1527(c)(2)(i),

25   (c)(3), 416.927(c)(2)(i), (c)(3).  However, the length of the treating relationship may

26   lend an opinion weight *vis-à-vis* the opinion of a *nontreating* source.  20 C.F.R. §§

27   404.1527(c)(2)(i), 416.927(c)(2)(i).  Nothing in the regulations suggests that, between

28   / / /

1  two opinions from the same treating source, the factfinder must give weight to an

2  unsupported opinion simply because it was prepared later in the treating relationship.

3        Citing out-of-circuit authority, plaintiff also argues that the ALJ is not allowed to

4  use his own medical judgment in lieu of a medical expert.  (JS 6.)  In fact, in the Ninth

5  Circuit, it is the ALJ's prerogative to resolve conflicts in the medical evidence.

6  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Plaintiff also argues that if the

7  ALJ believed the September 2011 opinion was inadequately supported, he should have

8  recontacted Dr. Nusinovich for explanation or retained a medical expert to review the

9  record.  The Court disagrees.  An ALJ's duty to develop the record further "is triggered

10  only when there is ambiguous evidence or when the record is inadequate to allow for

11  proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th

12  Cir. 2001).  Medical records are not ambiguous or inadequate simply because they

13  contradict or fail to support a plaintiff's claims.

14        Finally, plaintiff argues that the ALJ improperly gave weight to the state agency

15  physician's opinion.  (JS 7.)  Plaintiff is incorrect.  The state agency physician limited

16  plaintiff to the full range of medium work, which includes lifting up to 50 pounds.  (AR

17  306.)  By contrast, the ALJ gave weight to Dr. Nusinovich's undated opinion, which

18  limited plaintiff to lifting up to 30 pounds.  (AR 28.)

19        In sum, the ALJ properly rejected Dr. Nusinovich's September 2011 opinion.

20  Accordingly, remand on this issue is not warranted.

21  2.    <u>Plaintiff's credibility.</u>

22      A.    <u>Background.</u>

23        In disability reports, plaintiff claimed that he couldn't work because of severe

24  neck, back, and knee pain; slight blindness; high blood pressure; diabetes; and

25  depression.  (AR 192, 209, 210, 216, 239.)  He also alleged fatigue, dizziness, and

26  memory loss.  (AR 216, 242.)  He asserted that he couldn't stand or walk for long

27  periods and that he used a cane to walk.  (AR 209, 211.)  He needed help with chores

28  and he sometimes couldn't get out of bed.  (AR 209-11, 231.)  He could no longer drive

because of his poor vision.  (AR 210.)  He asserted that he could not lift any weight at all, that he could lift up to two pounds, and that he could lift three or four pounds.  (AR 209, 210, 239.)

At the hearing, plaintiff testified that he drove to the supermarket once per week, but otherwise his children did his shopping.  They also swept and vacuumed for him.  (AR 57-58.)  He rarely cooked and did laundry and dishes only once a month.  (*Id.*)  He could not lift more than eight pounds, walk for longer than 20 minutes, or sit for longer than 20 minutes.  (AR 60.)

The ALJ found that plaintiff was not credible with regard to the severity of his impairments.  (AR 27-29.)  Plaintiff contends that the ALJ provided insufficient reasons for finding plaintiff incredible.  (JS 12-14, 16-17.)  The Court finds that remand is not warranted.

B.   Discussion.

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  However, an ALJ may reject a claimant's allegations upon:  (1) finding evidence of malingering; or (2) providing clear and convincing reasons for so doing.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

In the absence of evidence of malingering, an ALJ may consider, *inter alia*, the following factors in weighing the claimant's credibility:  (1) inconsistencies in either the claimant's testimony or between the claimant's testimony and his conduct; (2) his work record; and (3) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p, 1996 WL 374186 (S.S.A.).  The ALJ may also use "ordinary techniques of credibility evaluation."  *Thomas*, 278 F.3d at 960.  The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the

1   record and is "sufficiently specific to allow a reviewing court to conclude the

2   adjudicator rejected the claimant's testimony on permissible grounds and did not

3   arbitrarily discredit a claimant's testimony . . . ." *Bunnell*, 947 F.2d at 345 (internal

4   quotation marks omitted).

5          Here, the ALJ reasoned that the medical evidence did not support plaintiff's

6   subjective claims. (AR 28.)  This interpretation of the record is reasonable.  As

7   discussed at length above, neither Dr. Nusinoich's notes nor the imaging tests suggested

8   that plaintiff's spine and knee impairments were severe enough to limit plaintiff to

9   sedentary work.  Moreover, as the ALJ noted (AR 28) and as plaintiff acknowledges

10  (AR 17), no treating source recommended that plaintiff use an assistive device.  In fact,

11  Dr. Nusinovich opined that plaintiff did not require an assistive device. (AR 317.)  As

12  to plaintiff's claims of near blindness, an examining ophthalmologist determined that

13  plaintiff had mild cataracts. (AR 302.)  However, he could not find an etiology for

14  plaintiff's complaints of poor vision and could not rule out malingering. (*Id.*)  Although

15  an ALJ may not premise the rejection of the claimant's testimony regarding subjective

16  symptoms *solely* on the lack of medical support, *Light v. Social Sec. Admin.*, 119 F.3d

17  789, 792 (9th Cir. 1997), weak objective support does undermine subjective complaints

18  of disabling symptoms, *see Tidwell v. Apfel*, 161 F.3d 599, 601-02 (9th Cir. 1998).

19         The ALJ also noted several inconsistencies in plaintiff's claims regarding his

20  limitations. (AR 27.)  Plaintiff claimed that his vision was extremely bad, but he

21  continued to drive (and in fact drove to the hearing, AR 57).  He variously reported that

22  he could not lift anything, that he could lift between two and four pounds, and that he

23  could lift up to eight pounds.  Inconsistencies between a plaintiff's testimony and his

24  conduct, or within his testimony, can undermine a plaintiff's claims of disabling pain or

25  other subjective symptoms. *See Thomas*, 278 F.3d at 958-59 (discounting credibility

26  where plaintiff presented "conflicting information" about her alcohol and drug use and

27  engaged in activities inconsistent with claim of disability).  In addition, the ALJ

28  properly found that plaintiff's ex-wife was not credible (AR 27), as she reported that

1    plaintiff no longer drove.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (ALJ

2    properly rejects reports from third party witnesses such as spouses and family members

3    where he provides "reasons that are germane to each witness").

4              Finally, the Court notes that conservative treatment, or a lack of treatment,

5    undermines a claimant's testimony regarding the severity of an impairment.  *Parra*,

6    *supra*; *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  As discussed above,

7    plaintiff received conservative, non-surgical treatment for his impairments.  As the ALJ

8    asserted (AR 24), this limited treatment is inconsistent with plaintiff's claims of

9    extreme, chronic, and debilitating pain, depression, and other ailments.

10             In sum, the ALJ provided several clear-and-convincing, record-supported reasons

11   for finding plaintiff incredible.  Accordingly, remand on this issue is not warranted.

12   3.      Plaintiff's past relevant work.

13           A.      Background.

14             Plaintiff has a class "C" license.  (AR 69.)  Prior to his alleged onset date, he was

15   self-employed as a driver.  (AR 65.)  He would drive people mainly to the airport, but

16   also to theme parks and businesses.  (AR 58-59, 65-67.)  When taking people to the

17   airport, he had to lift and carry their luggage, which weighed between five and 100

18   pounds.  (AR 56, 58-59.)  At the hearing, the vocational expert ("VE") testified that

19   plaintiff's past relevant work ("PRW") was a combination of two jobs set forth in the

20   Dictionary of Occupational Titles (the "DOT").  The first job was chauffeur, DOT entry

21   359.673-010 (the "359 chauffeur job"), characterized as light work.  The second job

22   was taxi driver/airport limousine driver, DOT entry 913.463-018, characterized as

23   medium work.  (AR 56-57, 67, 76.)  She further testified that plaintiff performed his

24   PRW as heavy.  (AR 56.)

25   / / /

26   / / /

27

28

1   The VE testified that a hypothetical person with plaintiff's vocational factors and

2   the RFC the ALJ assigned to plaintiff would *not* be able to perform the combined job of

3   chauffeur and taxi driver/airport limousine driver.  (AR 67-68.)  In addition, the VE

4   acknowledged that many chauffeur jobs, as advertised, require class "B" licenses, and

5   the DOT includes a classification class "B" license chauffeur.  (AR 72-73, 74-75.)

6   However, as described in the DOT, the 359 chauffeur job does not require a class "B"

7   license.  (AR 69, 74-76.)  Thus, plaintiff could perform the 359 chauffeur job, as

8   generally performed.  (AR 64, 69, 73-74, 76-77.)

9   The VE further testified the 359 chauffeur job had transferrable skills, and

10   plaintiff would not need to acquire additional vocational skills.  (AR 69, 73-74, 76-77.)

11   She further testified that there were approximately 1,000 jobs locally and 35,000 jobs

12   nationally in the 359 chauffeur job classification.  (AR 69.)  Moreover, plaintiff's lack

13   of a class "B" license would cause little to no erosion in those job numbers.  (AR 75,

14   77-78.)

15   In his decision, the ALJ determined that, based on the VE's testimony, plaintiff

16   was able to perform his PRW as a "limousine driver."  (AR 29.)  Plaintiff argues that

17   this determination is not supported by substantial evidence.  (JS 18-19, 22.)  The Court

18   finds that any error was harmless.

19       B.   Discussion.

20   At step four of the sequential disability evaluation, the claimant has the burden of

21   showing that he or she can no longer perform his or her PRW.  20 C.F.R. §§

22   404.1520(e), 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 331-32 (9th Cir. 1990).

23   Although the burden of proof lies with the claimant, the ALJ must make the requisite

24   factual findings to support his conclusion.  *Pinto v. Massanari*, 249 F.3d 840, 844-45

25   (9th Cir. 2001).  To do so, the ALJ must evaluate the work demands of the past relevant

26   work and compare them to the claimant's present capacity.  *Villa v. Heckler*, 797 F.2d

27   794, 797-98 (9th Cir. 1986).

28   / / /

1    Accordingly, the ALJ's findings at step four must include:  (1) a finding of fact as
2    to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of the
3    past job or occupation; and (3) a finding of fact that the claimant's RFC permits him to
4    return to the past job or occupation, as generally or actually performed.  *See* S.S.R.
5    82-62, 1982 WL 31386 (S.S.A.) at *4; *see also Pinto*, 249 F.3d at 844-45.  As to factor
6    (3), a VE's testimony that a hypothetical person with the claimant's RFC and vocational
7    factors could perform the claimant's PRW suffices as substantial evidence supporting
8    the ALJ's conclusion.  *See Pinto*, 249 F.3d at 845; *see also* S.S.R. 82-62, 1982 WL
9    31386, *3 (S.S.A.).  However, the VE must explain any conflict between her testimony
10   and the DOT, and the ALJ must determine that the deviation from the DOT is
11   reasonable.  *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

12   Plaintiff first argues that the ALJ's step 4 determination was erroneous because it
13   did not include the limitations set forth in Dr. Nusinovich's September 2011 opinion
14   and to which plaintiff testified.  (JS 18-19, 22-23.)  The Court disagrees.  As set forth
15   above, the ALJ properly rejected the September 2011 opinion and found plaintiff
16   incredible.  Accordingly, he was not required to include those limitations in his
17   hypothetical to the VE.  *See Light*, 119 F.3d at 793.

18   Plaintiff next argues that the ALJ misstated the VE's testimony in finding that
19   plaintiff could perform his PRW as a "limousine driver."  (JS 19.)  This argument is
20   well-taken.  As set forth above, the VE characterized plaintiff's PRW as a combination
21   of the 359 chauffeur job and the taxi driver/airport limousine driver job.  She testified
22   that a hypothetical person with plaintiff's RFC and vocational factors could *not* perform
23   that combined job.  Furthermore, she never explicitly testified that the hypothetical
24   person could perform the taxi driver/airport limousine driver job in itself.

25   To the extent she *implicitly* testified that the taxi driver/airport limousine driver
26   job was possible, her testimony conflicted with the DOT.  The ALJ restricted plaintiff to
27   carrying up to 30 pounds.  The taxi driver/airport limousine driver job, as described in
28   the DOT, is medium work, meaning the worker must lift up to 50 pounds.  20 C.F.R. §§

404.1567(c), 416.967(c).  The ALJ did not address this discrepancy between the VE's (implied) testimony and the DOT.  (*See* AR 29.)  Moreover, plaintiff testified that he was required to carry up to 100 pounds in the course of driving people to the airport.  In addition, he does not have a taxi license.  Therefore, the record does not support a finding that plaintiff can perform the taxi driver/airport limousine driver job, as generally or actually performed.

The Court finds, however, that the error was harmless.  If a claimant cannot perform his PRW, he is nevertheless not disabled if he can engage in other substantial gainful work that exists in the national economy, taking into account his RFC and vocational factors.  20 C.F.R. §§ 404.1520(g), 416.920(g).  As the ALJ asserted, the VE testified that a hypothetical person with plaintiff's RFC and vocational factors could work as a 359 chauffeur, and the availability of jobs in that category would not be eroded by plaintiff's lack of a class "B" license.  Accordingly, remand on this issue is not warranted.  *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## ORDER

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED: March 25, 2015

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge

14